IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KING OF FREIGHT LLC, a Kansas limited liability company,

Plaintiff,

v.

VIVA EXPRESS, INC., an Illinois corporation,

Defendant.

Case No.

**COMPLAINT**

COMES NOW the plaintiff, King of Freight LLC ("KOF"), by and through its counsel of record, Paul J. Skolaut of Hinkle Law Firm LLC, and for its cause of action against the defendant, Viva Express, Inc. ("Viva"), alleges and states the following:

**THE PARTIES AND JURISDICTIONAL ALLEGATIONS**

1. Plaintiff KOF is a Kansas limited liability company.

2. Defendant Viva is an Illinois corporation with its principal place of business located at 5818 South Archer Road, Unit 106, Summit, Illinois 60501.

3. Viva may be served by its registered agent, Vladimir Siryakov, at 2231 Somerset Lane, Mundelein, Illinois 60060, or through other lawful means.

4. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, in that there is diversity of citizenship of the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. This case involves the overland interstate shipment of goods from California to Kentucky based upon a written contract entered into between plaintiff KOF and defendant Viva containing a venue provision in this court.

**FACTS COMMON TO ALL COUNTS**

6. Plaintiff KOF is a property broker licensed through the Federal Motor Carrier Safety Administration.

7. At the time of the events giving rise to this action, defendant Viva was an interstate motor vehicle carrier operating under United States Department of Transportation ("USDOT") number 2412352.

8. On or about August 13, 2019, plaintiff KOF entered into an agreement with Engineered Plastic Components, Inc. ("EPC") to broker the shipment of an injection molding machine from the Port of Long Beach, California, to Lebanon, Kentucky, through a third-party motor carrier.

9. On or about August 16, 2019, plaintiff KOF arranged for defendant Viva to perform the shipment of the injection molding machine.

10. Defendant Viva agreed to the terms of plaintiff KOF's Motor Carrier/Broker Agreement ("MCBA"), located on plaintiff KOF's website home page.

11. The MCBA states that defendant Viva is solely responsible for the operation of the equipment, actions of the driver, and any other persons associated with the operation of the equipment transportation of freight.

12. The MCBA required defendant Viva to maintain active cargo insurance coverage sufficient to cover the loss or damage of any commodities and cargo carried.

13. The MCBA required defendant Viva to indemnify and hold harmless plaintiff KOF from any liability, settlements, or expense as a result of defendant Viva's actions, including defendant Viva's negligence.

14. The MCBA explicitly prohibited defendant Viva from re-brokering, assigning, or interline shipping the cargo without plaintiff KOF's prior written consent, which plaintiff KOF did not provide relative to the subject shipment. If a carrier violates this provision, the MCBA requires the carrier to assume liability for any loss incurred regarding the shipment.

15. Before plaintiff KOF confirmed the booking for the shipment of the injection molding machine, defendant Viva provided plaintiff KOF a copy of an insurance certificate purporting to provide coverage for the cargo carried by defendant Viva.

16. Mitsui Sumitomo Insurance Company, Ltd. ("Mitsui") also insured the injection molding machine on behalf of the manufacture, Japan Steel Works Ltd.

17. Upon information and belief, unbeknownst to plaintiff KOF, defendant Viva re-brokered the shipment to another motor carrier.

18. On or about August 16, 2019, the injection molding machine was loaded onto a trailer pursuant to the subcontract entered into by defendant Viva.

19. Sometime between August 16, 2019, and August 22, 2019, part of the injection molding machine was damaged.

20. On or about August 22, 2019, the injection molding machine was delivered to EPC's facility in Lebanon, Kentucky.

21. Upon delivery, EPC observed that the injection molding machine had been significantly damaged during overland transportation.

22. EPC was unable to use the injection molding machine because of the significant damage and was required to order a replacement machine from Japan Steel Works Ltd.

23. EPC and Mitsui filed suit against plaintiff KOF and defendant Viva seeking damages relating to the destroyed injection molding machine in excess of $75,000.

24. Defendant Viva never responded to the claims, entered an appearance, or participated in the settlement of the claims.

25. Plaintiff KOF and KOF's insurers – The Cincinnati Insurance Company, New York Marine and General Insurance Company, and Capitol Specialty Insurance Corporation -- settled the claims asserted by EPC and Mitsui in an effort to avoid further litigation.

26. Defendant Viva is liable for all of EPC's and Mitsui's claimed damages against plaintiff KOF.

**COUNT I: NEGLIGENCE**

27. Plaintiff KOF incorporates herein the allegations in numerical paragraphs 1 through 26 above as if fully stated herein.

28. Defendant Viva and/or its subcontractor(s) owed a duty to safely secure, transport, and unload the injection molding machine in accordance with recognized industry standards.

29. Defendant Viva and/or its subcontractor(s) breached this duty by negligently and carelessly securing, transporting, and unloading the injection molding machine.

30. As a result of defendant Viva's breach, plaintiff KOF suffered damages.

31. Plaintiff KOF alleges that its damages exceed $75,000.

**COUNT II: NEGLIGENT SELECTION OF A SUBCONTRACTOR**

32. Plaintiff KOF incorporates herein the allegations in numerical paragraphs 1 through 31 above as if fully stated herein.

33. Upon current information and belief, defendant Viva re-brokered the shipment to another motor carrier.

34. Viva acted negligently in re-brokering the shipment in one or more of the following particulars:

a. Failing to select one or more carriers who were in compliance with all applicable and material state, federal, and local laws, rules or regulations;

b. Failing to select one or more carriers who held appropriate operating authorities or who were represented in federal filings to be experienced (as per their FMCSA filings or otherwise) to carry and secure high value/complex machinery/oversized cargo, rather than "general freight";

c. Hiring one or more carriers who lack experience and/or knowledge and/or skill sufficient to carefully secure and/or carry high value/complex machinery/large object cargo, which had to be unloaded by riggers and/or cranes;

d. Hiring one or more carriers who were not indicated by the Federal Motor Carrier Safety Administration as being authorized to carry the specific type of cargo that the shipment consisted of;

e. Hiring one or more carriers who did not have satisfactory ratings and other careful historical records under the Safety Measurement System and/or other data systems maintained by the Federal Motor Carrier Safety Administration;

f. Hiring one or more carriers who lacked insurance to cover damage to the shipment;

g. Failing to properly direct and/or supervise its subcontractor(s) in securing or handling the shipment or otherwise;

h. Failing to instruct its subcontractor(s) how to properly secure the shipment;

i. Failing to ensure that the cargo was shipped in compliance with state and federal requirements, including, but not limited to those concerning the shipment of overweight and over-height loads;

j. Failing to secure adequate cargo insurance coverage, or failing to ensure at its subcontractor(s) secured same;

k. Failing to timely report the incident to the shipper and/or cargo's representative upon receiving notice that there was an incident, depriving EPC and others with involvement with the cargo of the chance to re-crate the cargo and/or to mitigate the loss; and,

l. In other particulars as disclosed in discovery and to be proven at trial.

35. As a result of defendant Viva's breach, plaintiff KOF suffered damages.

36. Plaintiff KOF alleges that its damages exceed $75,000.

**COUNT III: BREACH OF CONTRACT**

37. Plaintiff KOF incorporates herein the allegations in numerical paragraphs 1 through 36 above as if fully stated herein.

38. Defendant Viva owed contractual duties to plaintiff KOF related to the safe and secure interstate transportation of the injection molding machine in one or more of the following particulars:

a. Failing to safely secure the injection molding machine for interstate overland transportation;

b. Failing to deliver the Unit without damage, or otherwise in the same condition that it was received;

c. Utilizing a subcontractor to carry out its duties in contravention of the MCBA;

d. Failing to select one or more carriers who were in compliance with all applicable and material state, federal, and local laws, rules or regulations;

e. Failing to select one or more carriers who held appropriate operating authorities or who were represented in federal filings to be experienced (as per their FMCSA filings or otherwise) to carry and secure high value/complex machinery/oversized cargo, rather than "general freight";

f. Hiring one or more carriers who lack experience and/or knowledge and/or skill sufficient to carefully secure and/or carry high value/complex machinery/large object cargo, which had to be unloaded by riggers and/or cranes;

g. Hiring one or more carriers who were not indicated by the Federal Motor Carrier Safety Administration as being authorized to carry the specific type of cargo that the shipment consisted of;

h. Hiring one or more carriers who had did not have satisfactory ratings and other careful historical records under the Safety Measurement System and/or other data systems maintained by the Federal Motor Carrier Safety Administration;

i. Hiring one or more carriers who lacked insurance to cover damage to the shipment;

j. Failing to properly direct and/or supervise its subcontractor(s) in securing or handling the shipment or otherwise;

k. Failing to instruct its subcontractor(s) how to properly secure the shipment;

l. Failing to ensure that the cargo was shipped in compliance with state and federal requirements, including, but not limited to those concerning the shipment of overweight and over-height loads;

m. Failing to secure adequate cargo insurance coverage, or otherwise ensuring that its subcontractor(s) secured same;

n. Failing to timely report the incident to the shipper and/or cargo's representative upon receiving notice that there was an incident, depriving EPC and others with involvement with the cargo of the chance to re-crate the cargo and/or to mitigate the loss; and,

o. In other particulars as disclosed in discovery and to be proven at trial.

39. As a result of defendant Viva's breach of contract, plaintiff KOF suffered damages.

40. Plaintiff KOF alleges that its damages exceed $75,000.

**COUNT IV: INDEMNITY AND CONTRIBUTION**

41. Plaintiff KOF incorporates herein the allegations in numerical paragraphs 1 through 40 above as if fully stated herein.

42. Plaintiff KOF has denied and continues to deny liability to EPC and Mitsui.

43. Because of EPC and Mitsui's allegations, plaintiff KOF – individually and through its insurers – has incurred or paid expenses for the defense of plaintiff KOF in the underlying litigation involving EPC and Mitsui, including attorneys' fees, court costs, and related expenses.

44. Due to defendant Viva's failure to participate in the underlying litigation, plaintiff KOF reached a confidential settlement with EPC and Mitsui resolving all claims asserted by them related to the shipment.

45. Plaintiff KOF is entitled to equitable and contractual contribution from defendant Viva.

46. Plaintiff KOF is entitled to indemnity from defendant Viva for plaintiff KOF's attorneys' fees, court costs, expenses, and damages that plaintiff KOF has paid or incurred.

47. The above fees, costs, expenses, and damages are continuing and in amounts presently unknown to plaintiff KOF, which prays for leave to amend its crossclaim to assert the actual amount of such expenses when plaintiff KOF has ascertained them.

48. KOF alleges that its damages exceed $75,000.

WHEREFORE, plaintiff KOF prays that the Court find in its favor against defendant Viva and enter judgment against defendant Viva for any amounts paid by plaintiff King of Freight to resolve the claims asserted by EPC and Mitsui related to the shipment, for attorneys' fees, court costs, expenses, and other damages plaintiff KOF has paid or incurred related to same, and for such other relief the Court may deem just and proper.

Respectfully submitted,

HINKLE LAW FIRM LLC
1617 North Waterfront Parkway, Suite 400
Wichita, Kansas 67206
(316) 267-2000

/s/ Paul J. Skolaut
Paul J. Skolaut, #22143
jskolaut@hinklaw.com
**Attorneys for Plaintiff**

**DEMAND FOR JURY TRIAL**

COMES NOW the plaintiff, King of Freight LLC, and respectfully demands a trial by jury as provided by law on all issues presented herein.

/s/ Paul J. Skolaut
Paul J. Skolaut, #22143